**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0327n.06
Filed: April 28, 2005

No. 04-1259

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NATIONAL LABOR RELATIONS BOARD,    )
    )
    Petitioner,    )
    )
V.    )    ON APPLICATION FOR ENFORCEMENT
    )    OF AN ORDER OF THE NATIONAL
    )    LABOR RELATIONS BOARD
TRANS TECH LOGISTICS, INC.,    )
    )
    Respondent .    )
    )

BEFORE: MERRITT and ROGERS, Circuit Judges; and DUPLANTIER,* District Judge

DUPLANTIER, District Judge.

The National Labor Relations Board ("the Board") seeks enforcement of a bargaining order issued upon a finding that Trans Tech Logistics, Inc. ("Trans Tech") had violated the National Labor Relations Act, 29 U.S.C. §§158(a)(1) and (5), by refusing to bargain with District Lodge 57, International Association of Machinists and Aerospace Workers, AFL-CIO ("the Union"). The Union was certified following an election in which all seven eligible employees voted; a four to three vote favored the Union. Trans Tech refused to bargain with the Union, because it contended that an employee who voted in the election had quit his job with Trans Tech prior to voting and was ineligible to vote. The Board concluded that the employee was eligible to vote and issued an order requiring Trans Tech to bargain with the certified union.

---

* The Honorable Adrian G. Duplantier, United States District Judge for the Eastern District of Louisiana, sitting by designation.

We conclude that the Board did not abuse its discretion in deciding that the challenged employee was entitled to vote and that therefore the election was valid; we enter judgment enforcing the Board's bargaining order.

Trans Tech operates eight truck transportation terminals throughout the United States, transporting liquid bulk. At its Toledo, Ohio facility the company employed seven truck drivers, the only employees who were eligible to vote in the election. The sole issue is whether Frank Haneline, a truck driver, was ineligible to vote; if so, the one-vote margin would require a new election.

The election was held on March 29, 2002, between 7:30 and 8:00 a.m., at Trans Tech's facility. Haneline was not scheduled to and did not work that day. Shortly after the polls opened, Haneline approached Jon Clark, Trans Tech's operations manager, who was sitting in his truck near the entrance to the building in which the election was conducted. Clark told Haneline that he could not speak with him until after he had voted. Haneline went inside, voted, and about five minutes later, returned to Clark's truck. Haneline told Clark that he had gotten a position with another company and was quitting his job with Trans Tech. In answer to Haneline's inquiry about how much notice of quitting he should give to Trans Tech, Clark replied that no notice was required and that Haneline could "turn in his stuff" at that time. Trans Tech used no forms for employment termination.

Prior to the election, Haneline had informed his co-worker, Lee Bean, that he had secured a job with another trucking company and that he had driven his last trip for Trans Tech. Several days before the election Haneline removed some of his personal belongings from his company truck and told Bean that he would "clean out the rest at a later date."

Trans Tech filed "Objections to Conduct Affecting the Results of the Election," contending that Haneline " voluntarily quit his employment immediately after he voted and before the ballots were counted . . . there being a one (1) vote margin, the policies of the Act require that the election be re-run . . . ." A hearing officer conducted a hearing with respect to the objections. After considering the testimony of several

2

witnesses and exhibits, the hearing officer issued a report recommending that the objections be overruled and that the union be certified as the bargaining representative. The Board overruled the employer's exceptions to the report, adopted the hearing officer's findings and recommendations, and ordered issuance of the union's certification.

After Trans Tech refused the Union's request to bargain with it, the Union filed an unfair labor practice charge. The General Counsel of the NLRB issued a complaint alleging that Trans Tech had violated Section 8(a)(1) and (5) of the Act by refusing to bargain. After the employer filed an answer raising essentially the same issues with respect to the election, the NLRB granted a Motion for Summary Judgment filed by the General Counsel and ordered Trans Tech to bargain with the union. The NLRB then filed this application for enforcement of its order.

Our review of the National Labor Relations Board's findings is limited. *Bowling Transportation, Inc. v. NLRB*, 352 F.3d 274, 280 (6th Cir. 2003). We review findings of fact only to determine whether substantial evidence supports them. *Id*. The Board's interpretation of the National Labor Relations Act is entitled to deference; i.e., "[a]s long as Congress has not spoken directly to the precise question at issue, we review the Board's decision solely to assess whether it is based on a permissible construction of the statute . . . ." *Mt. Clemens General Hospital v. NLRB*, 328 F.3d 837, 844 (6th Cir. 2003)(internal quotations and citations omitted). We apply any reasonably defensible interpretation of the Act by the Board. *Id.*

The stipulated election agreement defined the "appropriate bargaining unit" as "[a]ll full-time and regular part-time truck drivers employed by the Employer . . . ." The Board has consistently held that "the test for determining eligibility is the individual's actual status on the . . . election date[]." *NLRB v. General Tube Co.*, 331 F.2d 751, 752 (6th Cir. 1964). Applying this test, the Board has declined to examine motive or intentions of the voter or to inject any other considerations such as the tenure of employment prior to or after the voting. That the Board's is a reasonable interpretation of the voter eligibility requirement is self-

3

evident, considering the difficulties and uncertainties involved in any other interpretation, and especially in close elections such as the one at issue, where tension often runs high.

The Board's factual determination that Haneline was still an employee when he voted is supported by substantial evidence. Undoubtedly, Haneline had made up his mind to quit; he carried out that intention immediately after he voted. He had already voted when he announced to his supervisor that he was quitting Trans Tech's employ. Until then, he was still an employee. While it is true that he had secured another job and had made preparations to terminate his employment with Trans Tech, until his announcement to Clark he could have changed his mind and continued his employment. The fact that Haneline performed no work on the day of the election is of no consequence; he was not scheduled to work that day.

In determining eligibility to vote, the Board applies a well established test: anyone employed on the election date is eligible to vote even if the employee intended to quit, and in fact does quit, immediately after voting. *See Harold M. Pittman Co.*, 303 NLRB 655 (1991). This is clearly a reasonable interpretation of the NLRA, given the myriad of circumstances involved in eligibility challenges, lending stability to the voting process in labor relations, an often contentious battleground. The rule has been consistently applied by the Board and approved by the courts in cases such as the following:

- *NLRB v. General Tube Co*., 331 F.2d 751, 752 (6th Cir. 1964): an employee who reported to work, notified her foreman that it would be her last day, voted, and then "clocked out" and did not return to work was an eligible voter;

- *Saint-Gobain Industrial Ceramics, Inc*. *v. NLRB*, 310 F.3d 778, 783 (D.C.Cir. 2002): employee who did not report for work on day of the election because he was using a vacation day to work a second job but who voted in the election and resigned from that employment two days after election was an eligible voter;

- *St. Elizabeth Community Hospital v. NLRB*, 708 F.2d 1436, 1444 (9th Cir. 1983): employees who prior to election date gave notice of intent to resign, but who were still employed on date of election were eligible to vote.

Because the Board's factual findings are supported by substantial evidence and because its interpretation of the NLRA is reasonable, we grant its application for enforcement of its order.